<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**


ERIK CHRISTOPHER STILLINGS,   :
                     :  Civil Action No. 09-2651 (FSH)
          Plaintiff,   :
                     :
                     :
          v.         :  **OPINION**
                     :
N.J. DEPT. OF CORRECTIONS,   :
et al.,                :
                     :
         Defendants.   :


**APPEARANCES:**

     ERIK CHRISTOPHER STILLINGS, Plaintiff <u>pro se</u>
     #445793/764353-B
     South Woods State Prison
     215 Burlington Road South
     Burlington, New Jersey 08302

     MELISSA JENNIFER BROWN, ESQ.
     MARKS, O'NEILL, OBRIEN & COURTNEY, PC
     6981 North Park Drive, Suite 300
     Pennsauken, New Jersey 08110


**HOCHBERG**, District Judge

    Plaintiff, Erik Christopher Stillings ("Stillings"), a convicted state prisoner  currently confined at the South Woods State Prison in Burlington, New Jersey, seeks to bring this action in forma pauperis ("IFP").  This matter was initially submitted for filing on May 20, 2009,[1] however, plaintiff failed

---

     [1]  The Complaint was received by the Clerk's Office on June 1, 2009.  Pursuant to the "prison mailbox rule," a prisoner pleading is deemed filed on the date the prisoner delivers it to prison officials for mailing, not on the date the pleading is

to submit a complete IFP application with his Complaint, as required under 28 U.S.C. § 1915(a) and (b).  Stillings did not submit his IFP application in this matter until June 25, 2009, (see docket entry no. 2), which IFP application was incomplete at that time because it did not contain Stillings' six-month prison account statement as required under 28 U.S.C. § 1915(a)(2).  Stillings later submitted his six-month prison account statement on July 9, 2009.  (Docket entry no. 3).  On June 20, 2009, he filed an application for appointment of counsel.  (Docket entry no. 4).

On January 29, 2010, counsel for defendant, East Jersey State Prison ("EJSP") Corrective Medical Services ("CMS"), filed a motion to dismiss the action for lack of service of process.  (Docket entry no. 5).  Stillings wrote to the Court on or about February 24, 2010, regarding the status of his case and his motion for appointment of counsel.  (Docket entry no. 6).  He

---

ultimately filed with the court.  See Houston v. Lack, 487 U.S. 266, 270-71 (1988); see also Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1988) (applying prison mailbox rule set forth in Houston, which dealt with filing of an appeal, to a pro se prisoner's filing of a habeas petition).  Although the Court is unable to determine the exact date that Stillings handed his prisoner civil rights Complaint to prison officials for mailing, Stillings signed a certification of his Complaint on May 20, 2009.  See Henderson v. Frank, 155 F.3d 159, 163-64 (3d Cir. 1988) (using date prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition).  Accordingly, the Court finds that May 20, 2009 was the date this Complaint was filed for purposes of calculating the timeliness of the pleading, and not the date the pleading was received by the Clerk of the Court on June 1, 2009.

again wrote to the Court on March 29, 2010.  (Docket entry no. 8).  On March 19, 2010, counsel for EJSP CMS filed a reply letter brief in support of the motion to dismiss this action for lack of service of process.  (Docket entry no. 7).

Based on plaintiff's affidavit of indigency, and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's IFP application, pursuant to 28 U.S.C. § 1915(a) (1998), and order the Clerk of the Court to file the Complaint.  Accordingly, at this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

For the reasons set forth below, the Court concludes that the Complaint must be dismissed in its entirety.  Because the Court finds this action subject to summary dismissal under 28 U.S.C. §§ 1915(e)(2) and 1915A, the motion to dismiss for lack of service of process filed by defendant EJSP CMS (docket entry no. 5) is rendered moot.  Similarly, plaintiff's application for appointment of counsel (docket entry no. 4) is moot.

I.  BACKGROUND

Stillings brings this civil action against the New Jersey Department of Corrections ("NJDOC"); East Jersey State Prison

("EJSP"); State Correction Officer ("SCO") Valairi; EJSP Corrective Medical Services ("CMS"); St. Francis Hospital; and Dr. Hockburg in Northern State Prison ("NSP").  (Complaint, Caption).  The following factual allegations are taken from the Complaint and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Stillings alleges that, in January 2007, he fell down stairs at Bayside State Prison, sustaining injuries to his back and knees.  In an unrelated disciplinary matter, Stillings was transferred to Southern State for "lock-up" for several days, and was placed on a bottom bunk.  He was then sent to South Woods State Prison for several days and had a single bed because South Woods State Prison only had single beds in "lock-up."  On March 7 or 8, 2007, Stillings was transferred to EJSP in the administrative segregation unit.  He asked for a bottom bunk because of his back and knee injuries, but was assigned a top bunk without a ladder.  Stillings states that he had placed a medical slip for an x-ray of his knees and lower back upon his arrival at EJSP.

On March 7 or 8, 2007, Stillings fell when he jumped from his top bunk.  Stilling's cellmate called defendant Valairi to the cell door to explain what had happened to plaintiff. Stillings alleges that he was bleeding from his head, throwing up

4

blood, and passing out.  Valairi asked if plaintiff was okay, and Stillings replied, "Yes," although he does not recall doing so. However, Stillings contends that with his injuries, he should have been taken for medical care.

Stillings alleges that EJSP CMS doctors and nurses left him in his cell for three days without providing medical care.  The daytime and night time nurse were told that plaintiff was not getting up for his medications, meals, or the bathroom.  On or about March 10, 2007, several officers called plaintiff outside his cell for medical transport.  They placed him, handcuffed, in the "cage" and questioned plaintiff about his injuries.  When it appeared that plaintiff was confused and had a high temperature, the officers transported plaintiff to the hospital.

Stillings was sent to St. Francis Hospital on March 10, 2007, where he remain hospitalized for several days until March 15, 2007.  At the hospital, he was given Tylenol 3 with Codeine for his pain.  However, plaintiff was allergic to that medication, which fact was allegedly listed on his chart, and he began to have a reaction to the medication.  Stillings also alleges that he continued to have pain in his head and that the pressure should have been relieved by drilling a hole in his skull, which was not done.  He claims he slept on a bloody pillow case the entire time he was at the hospital.

After he returned to prison, he was placed on a bottom bunk, and was given medications for seizures.  Plaintiff states concern that the medication will cause pancreatic and liver damage.  He also was given Motrin for pain and headaches, but was told that his problems will never go away because he "broke several nerve endings" in his neck.  In May 2007, he was sent to a neurologist at the CMS clinic and was told that he would get a cat scan for his neck and brain.  The cat scans were later changed to MRIs.

On October 5, 2007, while Stillings was confined at Northern State Prison, he saw Nurse Buckholt because he could not taste or smell.  On October 29, 2007, plaintiff was called to medical service by Dr. Hockburg, who told plaintiff that he had post-nasal drip.  Plaintiff was prescribed Benadryl, and was told that he must wait a year to see if his would regain his sense of taste and smell.  Plaintiff asked Dr. Hockburg for "some kind of test," but after a year of waiting he never received the test.  He also did not receive any follow-up for his loss of taste and smell with a neurologist.  Dr. Hockburg just told plaintiff he should be happy that he can't smell or taste in prison because the food is not good and the cell units smell bad.

Stillings filed this Complaint on May 20, 2009.  He seeks money damages in the amount of $3 million for pain and suffering and for the permanent loss of his sense of taste and smell.

In a letter to the Court, attached to his Complaint, plaintiff writes that he had contacted a lawyer in June 2007,

about his injuries.  The lawyer told plaintiff "to make a paper trail to find out what's wrong with [him] and get a diagnosis or prognosis."  Stillings alleges that he wrote many medical slips and administrative remedy forms for a medical diagnosis or prognosis from Dr. Hockburg, but received nothing back in writing.  His mother also wrote on plaintiff's behalf.  However, plaintiff never received any response.  When he was transferred to Northern State Prison, Stillings requested a copy of all of his medical records from March 2007 through November 2007.  He states that it cost him $23.00 for photocopy expenses and $9.00 for return receipt mail for 225 pages.

Stillings then claims that, after failing to receive any response to his medical requests for a diagnosis, he wrote to a lawyer in upstate New York.  He attaches a copy of a letter from a New York attorney dated March 7, 2008, declining representation.

In October 2008, Stillings was transferred to River Front State Prison.  Plaintiff put a medical slip for a doctor call in December 2008.  At that time, Dr. Clemmons told plaintiff that he should have had holes drilled in his head at St. Francis Hospital to relieve the pressure.  The swelling allegedly caused plaintiff to lose his olfactory senses permanently.  In addition, the cerebral hemorrhage caused plaintiff to suffer permanent brain damage, which includes memory loss, severe headaches, dizzy spells, and loss of taste and smell.

After Dr. Clemmons diagnosed plaintiff's problems, Stillings wrote to attorneys, Feldman and Pinto, to ask if he should file a tort claim, but they have not contacted him.  Stillings claims that he filed a tort claim after 90 days.  There does not appear to be a copy of a tort claim attached to the Complaint as an exhibit.  Stillings asks for assignment of pro bono counsel with respect to this action.

Stillings attaches many different documents to his Complaint.  He attaches letters he wrote to Feldman and Pinto Law offices in April and June 2007, and again in January 2009.  These letters confirm that plaintiff was aware of his injury date of March 7 or 8, 2007.  Stillings also attaches certified mail receipts with respect to letters he sent to Feldman and Pinto's office.

Stillings also attaches an undated letter from an attorney declining representation of plaintiff in his civil rights and medical malpractice claims, as well as a letter dated May 14, 2009, from an attorney in Haddonfield, New Jersey, who also declined to handle plaintiff's medical malpractice claim.  The last letter informed plaintiff that he had two years from the date of the incident to file his lawsuit.

A remedy form dated July 2, 2007 is attached to the Complaint, in which plaintiff seeks to have an MRI performed. This remedy form was answered, making a notation that plaintiff was scheduled for July 27, 2007.  Plaintiff appealed this

administratively, on or about August 15, 2007.  Stillings

attaches another remedy form dated December 11, 2007.  Finally,

he attaches a time line regarding the incident and his requests

for medical care.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-

134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),

requires a district court to review a complaint in a civil action

in which a prisoner is proceeding in forma pauperis or seeks

redress against a governmental employee or entity.  The Court is

required to identify cognizable claims and to sua sponte dismiss

any claim that is frivolous, malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief.  28 U.S.C. §§

1915(e)(2)(B) and 1915A.  This action is subject to sua sponte

screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and

1915A, because Smith is a prisoner and is proceeding as an

indigent.

In determining the sufficiency of a pro se complaint, the

Court must be mindful to construe it liberally in favor of the

plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94

(2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and

Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United

States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must

"accept as true all of the allegations in the complaint and all

9

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one. <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Recently, in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009), the Supreme Court identified two working principles underlying the standard for summary dismissal of a Complaint that fails to state a claim:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." <u>Fed. Rule Civ. Proc.</u> 8(a)(2).[2]

_____

[2]  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a

_Iqbal_, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausible give rise to an entitlement to relief.

_Iqbal_, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must

now allege "sufficient factual matter" to show that a claim is

facially plausible. This then "allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged. _Id_. at 1948. The Supreme Court's ruling in

_Iqbal_ emphasizes that a plaintiff must demonstrate that the

allegations of his complaint is plausible. _Id_. at 1949-50; _see_

_also_ _Bell Atlantic Corp. v. Twombly_, 505 U.S. 544, 555, & n.3

(2007); _Fowler v. UPMC Shadyside_, ___ F.3d ___, 2009 WL 2501662,

*4 (3d Cir., Aug. 18, 2009).

Consequently, the Third Circuit observed that _Iqbal_ provides

the "final nail-in-the-coffin" for the "no set of facts" standard

set forth in _Conley v. Gibson_, 355 U.S. 41, 45-46 (1957),[3] that

---

short and plain statement of the claim showing that the pleader
is entitled to relief." _Fed.R.Civ.P._ 8(a)(2). Rule 8(d)(1)
provides that "[e]ach allegation must be simple, concise, and
direct. No technical form is required." _Fed.R.Civ.P._ 8(d)(1).

[3] In _Conley_, a district court was permitted to summarily
dismiss a complaint for failure to state a claim only if "it

11

applied to federal complaints before <u>Twombly</u>.  <u>Fowler</u>, 2009 WL 2501662, *5.

This Court is mindful, however, that a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 110-111 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 117 (3d Cir. 2000).

### III.  <u>SECTION 1983 ACTIONS</u>

Stillings brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48

---

appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Id</u>., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements. <u>Iqbal</u> changed this standard for summary dismissal of a Complaint for failure to state a claim.

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, Stillings names the NJDOC and the EJSP as defendants. The NJDOC must be dismissed from this action pursuant to the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979).

Additionally, the NJDOC and EJSP must be dismissed from this lawsuit because they are not "persons" subject to liability under § 1983.  See Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989)(correctional facility is not a person under § 1983).; Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976).

IV.  ANALYSIS

The allegations in the Complaint suggest that Stillings is asserting an Eighth Amendment denial of medical care claim against the remaining named defendants.

First, with respect to defendant, St. Francis Hospital, Stillings has alleged no facts suggesting that St. Francis Hospital could be considered a 'state actor'.  At best, it appears that plaintiff is asserting a state law medical malpractice, or medical negligence claim against St. Francis Hospital.  Such a claim is not cognizable in a § 1983 action.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle,

14

429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or

negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple

16

medical care, which does not serve any penological purpose, violates the Eighth Amendment.  <u>Atkinson</u>, 316 F.3d at 266.  <u>See also Monmouth County Correctional Institutional Inmates</u>, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); <u>Durmer v. O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993); <u>White v. Napoleon</u>, 897 F.2d 103 (3d Cir. 1990).

Here, while Stillings may have alleged facts to suggest that he suffers a very real serious medical need, he does not satisfy the second prong alleging deliberate indifference.  At best, he alleges that St. Francis Hospital gave him Tylenol 3 with codeine, to which he was allergic, and that they allegedly did not change his pillow and sheets for several days.  These allegations amount to nothing more than medical negligence.  As stated above, claims of medical negligence or medical malpractice are not actionable under § 1983.

Therefore, the Complaint must be dismissed in its entirety as against defendant St. Francis Hospital, for failure to state a claim.[4]

---

[4]  Moreover, this Court finds that no diversity jurisdiction exists in this matter if plaintiff's claim is construed as medical negligence or medical malpractice under state law. Stillings can bring such common law claims in federal district court pursuant to 28 U.S.C. § 1332(a), if the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.  It has long been recognized that,

Likewise, any claims against Dr. Hockburg and other EJSP CMS doctors concerning their mistaken diagnoses or disagreements with respect to plaintiff's medical problems is not actionable under § 1983, because, at best, they sound in medical negligence. Plaintiff clearly alleges that he was being seen and treated by various doctors over the course of 2007. However, he was unhappy with the medications being given him, or the differences in opinion as to what was causing his loss of smell and taste and other symptoms.

Finally, with respect to SCO Valairi and the EJSP CMS medical staff who did not provide immediate medical care for plaintiff in March 2007 when his injury occurred, any claim that these defendants denied plaintiff medical care and treatment in violation of plaintiff's Eighth Amendment rights appears to be time-barred.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the

---

to found jurisdiction upon § 1332, there must be complete diversity among all parties, *i.e.*, each plaintiff must be a citizen of a different state from each defendant. Owen Equipment and Erection Co. V. Kroger, 437 U.S. 365 (1978). In particular, if a sole plaintiff and any one of several defendants are citizens of the same state, complete diversity is lacking and the action would have to be dismissed for lack of jurisdiction. Id. Here, there does not appear to be diversity of jurisdiction between the plaintiff and St. Francis Hospital, located in Trenton, New Jersey. Plaintiff is currently confined in New Jersey. Therefore, because complete diversity appears to be lacking, the Court has no subject matter jurisdiction over any state law claim that may be construed from the Complaint against this defendant, pursuant to 28 U.S.C. § 1332(a).

statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint. See, e.g., Jones v. Bock, 549 U.S. 199, 214-15 (2007)(if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"); see also Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hunterson v. DiSabato, 2007 WL 1771315 (3d Cir.2007)("district court may sua sponte dismiss a claim as time-barred under 28 U.S.C. § 1915(A)(b)(1) where it is apparent from the complaint that the applicable limitations period has run")(citing Jones v. Bock, Pino v. Ryan)(not precedential); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying Pino to current § 1915(e)); Rounds v. Baker, 141 F.3d 1170 (8th Cir. 1998)(unpub.); Johnstone v. United States, 980 F. Supp. 148 (E.D. Pa. 1997) (applying Pino to current § 1915(e)).

Federal courts look to state law to determine the limitations period for § 1983 actions. See Wallace v. Kato, 549 U.S. 384, 387-88 (2007). Civil rights or constitutional tort claims, such as that presented here, are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. See Wallace, supra; Jones v. R.R. Donnelley & Sons, 541 U.S. 369, 382 (2004)(federal civil rights claims under §§ 1981, 1982, 1983 and 1985 are subject to the state statute of limitations for personal injury actions); Wilson v. Garcia, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs plaintiffs' claims under §§ 1983 and 1985. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987). Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application. Wilson v. Garcia, 471 U.S. at 269.

Moreover, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to

state law." Wallace v. Kato, 549 U.S. at 388 (emphasis in
original). A claim accrues as soon as the injured party "knew or
had reason to know of the injury that constitutes the basis of
his action." Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir.
1982). See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38
F.3d 1380, 1385 (3d Cir. 1994). "Plaintiff's actual knowledge is
irrelevant. Rather, the question is whether the knowledge was
known, or through reasonable diligence, knowable. Moreover, the
claim accrues upon knowledge of the actual injury, not that the
injury constitutes a legal wrong." Fassnacht v. United States,
1996 WL 41621 (E.D. Pa. Feb. 2, 1996)(citing Oshiver, 38 F.3d at
1386).

Here, the medical claim at issue admittedly arose on March 7
or 8, 2007, when plaintiff fell. Stillings was sent to the
hospital for treatment three days later. Consequently, any delay
in treatment was known to Stillings at the time it happened, or
at least, in early March 2007. Stillings also admits that he
filed a tort claim, although he does not indicate the persons
named in the tort claim. He also admits that he pursued legal
help and representation, as early as April 2007, when he wrote to
a law firm for legal advice and assistance with respect to his
claims arising from the March 2007 incident. Thus, it is plain
from the face of the Complaint and the several attachments
thereto, that Stillings knew, or had reason to know, in March
2007, that he may have a claim against the defendants, Valairi,

21

and EJSP CMS staff, as well as St. Francis Hospital, for a
medical negligence and/or denial of medical care claim.  However,
Stillings did not file this federal action until May 20, 2009,
more than two years later.

Moreover, upon careful review of the Complaint, there is
nothing alleged to support an argument that Stillings would be
entitled to equitable tolling of the statute of limitations.  Any
claim that Stillings now alleges concerning a failure to provide
adequate medical care accrued as admitted in March 2007.
Stillings alleges no facts or extraordinary circumstances that
would permit statutory or equitable tolling under either New
Jersey or federal law.[5]  Stillings does not plead ignorance of the

_____

[5] New Jersey statutes set forth certain bases for
"statutory tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing
tolling because of minority or insanity); N.J.S.A. § 2A 14-22
(detailing tolling because of nonresidency of persons liable).
New Jersey law permits "equitable tolling" where "the complainant
has been induced or tricked by his adversary's misconduct into
allowing the filing deadline to pass," or where a plaintiff has
"in some extraordinary way" been prevented from asserting his
rights, or where a plaintiff has timely asserted his rights
mistakenly by either defective pleading or in the wrong forum.
See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted),
certif. denied, 172 N.J. 178 (2002).  "However, absent a showing
of intentional inducement or trickery by a defendant, the
doctrine of equitable tolling should be applied sparingly and
only in the rare situation where it is demanded by sound legal
principles as well as the interests of justice."  Id.
    When state tolling rules contradict federal law or policy,
in certain limited circumstances, federal courts can turn to
federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370
(3d Cir. 2000).  Under federal law, equitable tolling is
appropriate in three general scenarios:
        (1) where a defendant actively misleads a plaintiff
        with respect to her cause of action; (2) where the
        plaintiff has been prevented from asserting her claim
        as a result of other extraordinary circumstances; or

law or the fact of his confinement (neither excuse being sufficient to relax the statute of limitations bar in this instance) as the basis for delay in bringing this suit now. Stillings has not offered any explanation for his lack of diligence in pursuing this claim after it had expired.  Rather, it appears that Stillings may be alleging that he sought legal advice and assistance to bring such a claim and did not receive a timely response.  Again, this is not an instance of excusable neglect or extraordinary circumstances to warrant equitable tolling.  Therefore, the Court finds that this Complaint against the remaining defendants, SCO Valairi and the EJSP CMS staff is time-barred and must be dismissed with prejudice.

V.   CONCLUSION

Therefore, for the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety, as against all named defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  An appropriate order follows.


                              s/Faith S. Hochberg
                              FAITH S. HOCHBERG
                              United States District Judge
Dated:  April 13, 2010

---

     (3) where the plaintiff asserts her claims in a timely
     manner but has done so in the wrong forum.

Id. n.9.